EATON PAPER CORPORATION, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 106140.   Promulgated November 12, 1942.

*Rodgers Donaldson, Esq.,* for the petitioner.
*Martin M. Lore, Esq.,* for the respondent.

OPINION.

STERNHAGEN, *Judge:* 1. The petitioner contests the Commissioner's determination that the amounts of $2,560.02 and $12,649.97 were discounts in the price of goods purchased from the Brightwater company and as such should operate to reduce the cost of goods in determining taxable net income. Petitioner argues that, by "burrowing under the terms of the contracts" and regarding the extraneous evidence, the Court may determine what the "real agreement of the parties" was, and that what on its face appears to be discount is in reality part of the sale price of the shares of the Adams company. This, we think, is an inadmissible view of the transactions, not because we give greater importance to the form than to the substance of the events, but because, both in form and substance, the petitioner made two separate contracts with two different parties covering two different subjects. The contracts were deliberately cast in the form they took because Guild, who negotiated them, made no offer to buy the shares at petitioner's price of $133,000. Instead, after petitioner's refusal of his offer of $100,000, he offered petitioner the two propositions, and these were then separately executed—the sale contract by petitioner and Young, and this has been performed, and the discount contract by petitioner and Brightwater, and this was executory and in the course

of performance. In both contracts, carefully drawn under these circumstances, there is a complete omission of any reference one to the other, and the terms are independently clear and complete. Before the law they must be separately regarded, whether for the effect upon taxes or for any other purpose.

So far as the evidence shows, the contemporaneous treatment of the contract by the seller and buyer was that of a discount, so that even if the terms of the contract were ambiguous, it would be necessary to construe it as such. The only support to be found in conduct for petitioner's position, besides the historical circumstances, is its own statements on its balance sheet in the annual report to the shareholders, in which the amounts were called proceeds or payments for the shares. This must be balanced against the seller's treatment of the discounts as such in its income tax return, and is thus deprived of force as a contemporaneous construction to resolve an ambiguity or to construe the contract for tax purposes at variance with its express terms.

We are of opinion that the Commissioner correctly regarded the $2,560.02 and $12,649.97 as discount in the respective years in determining cost of goods and not as if they were received as part of the sale price of the 200 shares of the Adams company.

2. In the deficiency notice, the disallowance of credits said to have been claimed on the return for contracts restricting dividend payments is based upon the absence of evidence of a written contract executed before May 1, 1936. The return is not in evidence, and the evidence does not show what credits were so claimed on the return, and the allegations on the subject in the petition were denied in the answer. The nearest the evidence comes to showing the specific facts to support a credit is, as shown in the findings, that the amounts of $12,398.40 and $15,537.93 were estimated by the trustee as the amounts of sinking fund payments to become due April 1. Respondent, in his brief, mentions the inadequacy of the evidence, but argues as a matter of law that the petitioner is not entitled to any credit because it has no such contract as would support the credit under the statute. While the evidence is deficient, cf. *Greenwood Packing Plant*, 46 B. T. A. 430, 435 (on review C. C. A., 4th Cir.), we are of opinion that in any event the restrictions upon the petitioner are not those prescribed by the statute. These undistributed profits tax credits are extremely technical and may be taken only when all of the factors which the statute prescribes are shown. *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46; *Antietam Hotel Corporation* v. *Commissioner*, 123 Fed. (2d) 274; *Helvering* v. *Moloney Electric Co.*, 120 Fed. (2d) 617; certiorari denied, 314 U. S. 682; *Helms Bakeries*, 46 B. T. A. 308.

The conditions of section 26 (c) (2) have not been met. No part of petitioner's "earnings and profits of the taxable year" is required by a contract "which expressly deals with the disposition of earnings and

profits of the taxable year," to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; and no part of such amount of earnings and profits of the taxable year has been so paid or set aside. The sinking fund provisions of the bond indenture do not require that any part of the annual payments be made from the current earnings and profits. The source of such payments is not limited. They might be taken from any source, and the amount thereof was measured by the excess of the amount of the preceding year's earnings (if less than $75,000) over the preceding year's interest. This is further from the statutory terms than that of the sinking fund provision in *Helvering* v. *Moloney Electric Co., supra,* or *Antietam Hotel Corporation* v. *Commissioner, supra.* Cf. *Commissioner* v. *Strong Manufacturing Co.,* 124 Fed. (2d) 360; certiorari granted Apr. 6, 1942. See *A. E. Staley Manufacturing Co.,* 46 B. T. A. 199 (on review C. C. A., 7th Cir.). Payments may be made in bonds, and apparently, according to the note on the 1937 report to the shareholders, such a payment was made with bonds which may have been acquired out of earnings or other funds of an earlier year. This shows that the sinking fund was not limited to payments out of earnings and profits of the taxable year, *A. E. Staley Manufacturing Co., supra.*

The petitioner also claims that it is entitled to credit under section 26 (c) (1) because it is prohibited by the terms of the deposit agreement of March 8, 1933, from paying dividends. The petitioner itself was not a party that executed this agreement, and the evidence contains no written agreement executed by the petitioner. Petitioner relies upon the fact that the agreement was signed by its reorganization predecessor and that the president testified that petitioner's preferred shares are governed by the deposit agreement. The terms of the preferred shares are not in evidence. In view of the requirement of strict proof called for by these credit provisions, this is not sufficient proof of a contract executed by petitioner as the statute requires. Although the petitioner itself did execute the mortgage indenture of May 1, 1933, which provided for the payment of interest and payments to the sinking fund, it contained no provision dealing with the payment of dividends. Apparently, petitioner did not at the same time also execute a dividend restriction agreement, and the evidence does not show either a contract restricting dividends or an amendment of the charter or other share restriction. See *Lehigh Structural Steel Co.* v. *Commissioner,* 127 Fed. (2d) 67; and compare *Warren Telephone Co.* v. *Commissioner,* 128 Fed. (2d) 503, and *Metal Specialty Co.* v. *Commissioner,* 128 Fed. (2d) 259. We may not pass these deficiencies in the evidence and build one supposition on another to support petitioner's claim. The disallowance of credit under section 26 (c) (1),

as well as under (c) (2), must be sustained. It may be added that if the terms of the 1933 reorganization plan set forth in the findings were in a contract of petitioner, and therefore to be tested against the provisions of section 26 (c) (1), it is by no means clear that the statutory conditions could be found in the contract. See *Commissioner* v. *Columbia River Paper Mills*, 127 Fed. (2d) 558.

Reviewed by the Court.

*Decision will be entered for the respondent.*